

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00326-CV

**IN THE INTEREST OF T.H.J.**, C.H.J., J.H.J., and P.H.J., Children

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00096
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:   Sandee Bryan Marion, Chief Justice
Dissenting Opinion by: Rebeca C. Martinez, Justice

Sitting:      Sandee Bryan Marion, Chief Justice
              Rebeca C. Martinez, Justice
              Liza A. Rodriguez, Justice

Delivered and Filed: January 2, 2020

AFFIRMED

P.J. appeals the trial court's order terminating his parental rights. The only issue presented on appeal is whether the evidence is legally and factually sufficient to support the trial court's finding that termination was in the children's best interest. We affirm the trial court's order.

### BACKGROUND

On January 17, 2018, the Texas Department of Family and Protective Services filed a petition to terminate P.J.'s parental rights to T.H.J., C.H.J., J.H.J., and P.H.J. On May 2, 2019, a bench trial was held. The trial court terminated P.J.'s parental rights, and he appeals.

### STANDARD OF REVIEW AND STATUTORY REQUIREMENTS

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate

grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found clear and convincing evidence of the following four predicate grounds under subsection 161.001(b)(1) to terminate P.J.'s parental rights: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical and emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being; (3) constructively abandoned the children; and (4) knowingly engaged in criminal conduct that resulted in P.J.'s conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of the filing of the petition. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (N), (Q); *see also In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (noting evidence that proves one or more statutory grounds for termination may be probative in proving termination is in the child's best interest). The trial court also found clear and convincing evidence that terminating P.J.'s parental rights was in the children's best interest.

We evaluate the legal and factual sufficiency of the evidence to support the trial court's findings under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). Under these standards, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.).

### BEST INTEREST FINDING

In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the

child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id*. The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d at 27. "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

P.J. was incarcerated when the children were removed by the Department in 2018. On April 24, 2014, P.J. pled nolo contendere to the offense of injury to a child causing bodily injury which is a third degree felony punishable by not less than two years or more than ten years' imprisonment. *See* TEX. PENAL CODE ANN. §§ 12.34(a), 22.04(a)(3), (f). Although his sentence was suspended and he was placed on community supervision, P.J. was sentenced to the maximum term of ten years. The victim, A.B., was thirteen at the time of the offense and a relative of the children. At trial, P.J. described the offense as his having "stepped on her hand." Given that P.J. was sentenced to the maximum term for the offense, the trial court could have believed from P.J.'s testimony that he failed to accept the serious nature of the offense.

On March 15, 2016, the State filed a motion to revoke P.J.'s community supervision alleging numerous violations of his terms and conditions, including committing the offense of assault on or about March 10, 2016. P.J. pled true to committing the offense and was sentenced to four years' imprisonment on April 12, 2016. *See Brooks v. State*, 995 S.W.2d 762, 763 (Tex.

App.—San Antonio 1999, no pet.) ("A plea of true, standing alone, is sufficient to support [a] trial court's order of revocation."). P.J. testified that he assaulted the children's mother and described the offense as "family household assault strangulation." *In re M.G.*, No. 14-15-00644-CV, 2015 WL 9241300, at *10 (Tex. App.—Houston [14th Dist.] Dec. 15, 2015, no pet.) (mem. op.) (referring to father's incarceration for assault of mother as evidence in support of finding that termination was in child's best interest). P.J. remained incarcerated throughout the pendency of the case and was not due to be released until February 24, 2020, almost ten months after the date of trial. At the time of the trial, the children were eight, seven, six, and four, and P.J. had been absent from their lives due to his incarceration for three years. P.J. testified he had a parole review hearing in June and could be released in October of 2019; however, he admitted he had previously been denied parole three times.

"[C]riminal conduct and incarceration affects a parent's life and the ability to parent, thereby subjecting a child to potential emotional and physical danger." *In re S.A.M.*, No. 04-18-00607-CV, 2019 WL 573469, at *5 (Tex. App.—San Antonio Feb. 13, 2019, pet. denied) (mem. op.). Additionally, "[a] parent's incarceration is relevant to his ability to meet the child's present and future physical and emotional needs." *In re J.G.S.*, 550 S.W.3d 698, 706 (Tex. App.—El Paso 2018, no pet.). "[A] parent's incarceration at the time of trial makes the child's future uncertain." *Id*. Therefore, based on P.J.'s criminal conduct and incarceration, the trial court could have believed P.J.'s conduct subjected the children to potential emotional and physical danger, made him unable to meet the children's physical and emotional needs, and made the children's future uncertain. The trial court could further have found that P.J.'s minimization of the injury he inflicted on A.B. raised concerns regarding the danger he posed to the children. Such a finding is further supported by the CASA volunteer's testimony that the children are currently in therapy and "always" complain in therapy of being afraid and fearful of P.J. and that one child is afraid P.J. is

"going to come and get her."  *See In re A.D.K.*, No. 06-19-00019-CV, 2019 WL 2607599, at *5 (Tex. App.—Texarkana June 26, 2019, pet. denied) (mem. op.) (recognizing evidence that children were afraid of father supported finding that termination was in children's best interest); *see also In re F.M.*, 2017 WL 393610, at *4 ("[E]vidence of only one [*Holley*] factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in a child's best interest—especially when undisputed evidence shows that the parental relationship endangered the child's safety.").

The evidence at trial established the Department had previously removed the children from their parents' care in 2013.  P.J. was not incarcerated during the pendency of that case.  P.J. testified he completed a parenting class at that time, but the CASA volunteer testified P.J. did not appear for hearings or engage in services in that case.  The Department's legal worker testified P.J. received a copy of his service plan in the underlying case while incarcerated in March of 2018, and a second copy on April 15, 2019.  Although P.J. denied receiving the plan in March of 2018, the trial court could have chosen to believe the legal worker.  The legal worker also testified P.J. is offered services while incarcerated; however, he only completed a parenting class.  Although P.J. testified he completed other services, the trial court could have disbelieved him.  *In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.) (noting failure to comply with service plan supports a finding that termination is in the best interest of the child).

At the time of trial, the children had been living at Legacy Ranch for approximately four months.  The legal worker testified the children are receiving the educational and counseling services they need at Legacy Ranch which she described as a good placement for them.  The Department's plan for the children is an unrelated adoption by a previous foster family who was interested in adopting the children but wanted to ensure the parents' rights were first terminated. *In re C.H.*, 89 S.W.3d at 28 (noting the relevant inquiry on appeal is "whether, on the entire record,

a factfinder could reasonably form a firm conviction or belief that termination of the parent's rights would be in the child's best interest—even if the agency is unable to identify with precision the child's future home environment").

Having reviewed the record, we hold the evidence is legally and factually sufficient to support the trial court's finding that terminating P.J.'s parental rights was in children's best interest.

## CONCLUSION

The order of the trial court is affirmed.

Sandee Bryan Marion, Chief Justice